IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SHARNITA V. GREEN, ET AL., <br> *Plaintiffs,* <br> v. <br> CORRECTIONAL OFFICER ADAMS, <br> *Defendant.* | CIVIL ACTION NO. 3:10-CV-00013 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

Sharnita V. Green and Crystal Brumfield ("Plaintiffs") are inmates in the Virginia Department of Corrections ("VDOC"). By counsel, Plaintiffs filed this civil action pursuant to 42 U.S.C. § 1983, alleging that Correctional Officer Adams ("Defendant") was deliberately indifferent towards their physical safety when he failed to take reasonable steps to safeguard them from an attack by another inmate, in violation of their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

Plaintiffs seek damages in the amount of $10 million, plus attorneys fees and costs. By counsel, Defendant filed a motion for summary judgment on the ground that Plaintiffs failed to properly exhaust all available administrative remedies prior to filing the instant suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Upon review of the record, I will grant Defendant's motion for summary judgment, and the case will be dismissed and stricken from the court's active docket.[1]

---

[1] The instant motion was fully briefed, and a hearing was scheduled. However, given that the facts and legal contentions are adequately presented in the material before me, and oral argument would not aid the decisional process, I entered an order canceling the hearing.

**I.**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon consideration of a motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and is properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. *See* Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *Anderson*, 477 U.S. at at 256-57.

**II.**

*A.*

Plaintiffs state that, as inmates at the Fluvanna Correctional Center for Women ("Fluvanna"), they shared a cell in Building 3, where Defendant was the correctional officer in charge of security. According to Plaintiffs,

> [t]he correctional officers at [Fluvanna] sit in a centrally-located secure area called the "bubble" where they have an unobstructed view of each hallway in the building and also can monitor various areas via video monitors conveying the images captures [*sic*] by security cameras in the building. Over the course of his time assigned to building 3, [Defendant] had a thorough knowledge of all the inmates in the building, and the cells to which each inmate was assigned.

On October 13, 2009, an inmate named "LaPrecious N. Austin started an argument with Brumfield."[2] Green intervened, causing "Austin to become agitated and threaten violence against Green." Defendant and another correction officer broke up the altercation. "As they did so, Austin lunged at [Defendant], who in turn grabbed Austin from behind and forcibly escorted her to her cell. As [Defendant] was taking Austin away, Austin screamed that she would kill both Green and Brumfield." At approximately 11:00 p.m. that evening, Austin, whose cell was across the hall from Plaintiffs' cell, "passed Green in the bathroom and again threatened to kill" her.

Plaintiffs allege that,

> [d]uring the early morning hours of the next day, at approximately 4:00 a.m. of October 14, 2009, Green and Brumfield's cell was remotely unlocked and Austin entered the cell wielding a sock filled with two combination locks. For several minutes Austin intentionally and sadistically swung the lock-filled sock at the head, shoulders and body of both Green and Brumfield. They were unable to shield themselves from the blows as they had both been asleep immediately before the attack and unaware that they were in the midst of a vicious assault.
>
> Eventually, correctional officers entered the cell and subdued Austin to end the attack. At no time did [Defendant] do anything to intervene or stop the attack despite the fact that he was in the bubble and only 20 yards from the plaintiffs' cell. [Defendant] had both a clear site [*sic*] of vision to the plaintiffs' cell and also could see the attack on the security cameras.
>
> The individual cells in building 3 at [Fluvanna] must be unlocked remotely by the correctional officer in the bubble. An inmate desiring to exit her cell must alert the officer by pressing a call button in her cell. Similarly, to enter

---

[2] In later filings with the court, Plaintiffs refer to their attacker as "Alston," not "Austin."

a cell, with an inmate's own cell or that of another inmate, an inmate must draw the attention of the officer in the bubble for the door to be unlocked.

It is believed that [Defendant] was the only correctional officer in the bubble during the overnight hours at [Fluvanna]. It is further believed that [Defendant] was the only person who could have unlocked both Austin's cell, allowing her to leave her cell at 4:00 a.m., and also unlocked the cell housing Green and Brumfield, allowing Austin to enter their cell and proceed to attack the plaintiffs.

Under normal circumstances there would have been no need for an inmate to enter the locked cell of another inmate during the overnight hours. Indeed, it is understood that the policy at [Fluvanna] prohibits access by an inmate to another inmate's cell during overnight hours.

[Defendant] was aware from the altercation between Austin, Green and Brumfield hours before the attack, and heard verbally threaten to kill plaintiffs. [Defendant] therefore had knowledge that Austin had an intention to harm Green and Brumfield, and should have been aware that any contact initiated by Austin towards plaintiffs was for the sole purpose of committing acts of violence against Green and Brumfield.

Upon information and belief, [Defendant] permitted Austin to leave her cell during the early morning hours of October 14, 2009, and to enter the cell housing Green and Brumfield, with the knowledge that . . . Austin intended to assault and batter the plaintiffs. By so doing, [Defendant] was deliberately indifferent to the physical safety of the plaintiffs.

(Paragraph numbers omitted.)

Plaintiffs allege that, "[a]s a direct result of the attack," "Green has suffered damaging blows to head, neck and entire body," and "Brumfield has suffered damaging blows to her head and body." Plaintiffs maintain that they have both "suffered emotional distress over the attack and the defendant's failure to protect [them]," and that "Green believes that she suffers from head trauma inasmuch as she suffers headaches and has difficulty processing thoughts and

remembering information."[3]  Plaintiffs add that, "[f]ollowing the attack, Brumfield was transferred to the Virginia Correctional Center for Women in Goochland County."

**B.**

The record indicates that Plaintiffs received orientation on grievance procedures when they were received into the VDOC. On November 10, 2009, Brumfield was transferred from Fluvanna to the Virginia Correctional Center for Women in Goochland County ("Goochland"), where she again received instruction on grievance procedures; on May 4, 2010, Brumfield was transferred back to Fluvanna. Defendant maintains that "[n]either Green nor Brumfield filed any informal complaints or regular grievances concerning the allegations in their Complaint," and he submits affidavits in support of this assertion from the grievance coordinators at Fluvanna and Goochland.

Plaintiffs counter that they did, in fact, exhaust their administrative remedies by doing the following:

- Submitting numerous Inmate Request Forms to the appropriate prison officials immediately following the incident.

- Submitting numerous Informal Complaint Forms after the foregoing request forms were denied, none of which were answered.

- Meeting with their building manager, the prison investigator and the prison warden to discuss the incident.

More specifically, Plaintiffs assert that,

[a]fter the attack, [they] talked to their building 3 manager, Mr. G. McGee[,] about the incident. Mr. McGee told the plaintiffs they [*sic*] it was out of his

---

[3] Plaintiffs also allege that "[Fluvanna] has denied Green access to adequate medical care, including treatment for her head trauma," and that "[Fluvannna] has denied Brumfield adequate medical treatment for the injuries suffered." However, the two enumerated counts of the complaint explicitly put forth claims only against Correctional Officer Adams, alleging that he was deliberately indifferent to Plaintiffs' physical safety; the complaint does not assert any Eight Amendment claims for denial of adequate medical care.

hands. The plaintiffs were thereafter removed from building 3 and sent to a segregation unit in building 8 for the next two days. While there, the plaintiffs sent Inmate Request Forms to Mahor Frame, who is the next in command following Mr. McGee. They also sent such forms to Sgt. Horne and the medical unit. The plaintiffs submitted such requests according to institutional rules that require inmates to seek resolution of issues through requests before submitting Informal Complaints.

Copies of the request forms to Major Frame are attached to the declaration of Sharnita V. Green[, which was submitted in support of Plaintiffs' opposition to Defendant's motion for summary judgment]. Major Frame answered the request[s] by forwarding them to Mr. Back, the unit manager of building 1, where the plaintiffs were transferred following segregation. Mr. Back was not involved with the attack and never responded to the inmate request form. Other than Major Frame telling plaintiffs to follow their chain of command, none of the requests were answered in a substantive manner.

The plaintiffs thereafter submitted Informal Complaints to [then-]Warden Wheeler, Major Frame and the medical unit. None of the informal complaint forms were answered by [an] officer or manager at [Fluvanna].

Plaintiff Crystal Brumfield made carbon copies of the requests and informal complaints she submitted. However, when she was transferred to [Goochland], a correctional officer in the property department took the copies and threw them away.

### III.

#### *A.*

The VDOC has established a grievance process with which inmates are oriented upon intake into the VDOC. The VDOC grievance process requires that, prior to submitting a regular grievance, an inmate must demonstrate that she has made a good faith effort to resolve her complaint informally. An informal resolution is attempted by submitting an informal complaint form to the appropriate department head. Staff members are required to respond within 15 calendar days; the 15-day period is an attempt to ensure that informal responses are provided prior to the expiration of the 30-day period within which an inmate may file a regular grievance, should she be dissatisfied with the outcome of her informal complaint. When an inmate files a

regular grievance, the regular grievance must meet the filing requirements of VDOC Operating Procedure ("OP") 866. If the regular grievance is deficient or has been submitted inappropriately, *e.g.*, without first having been reviewed in the informal complaint stage, the inmate must be informed within two working days of the receipt of the regular grievance. If a regular grievance is deemed inappropriate for intake, the reason for its rejection is noted upon the reverse side of the grievance form, and the inmate is instructed as to how she may remedy the intake deficiency. If an inmate disagrees with the intake decision, she may forward the grievance to the Regional Ombudsman for an appeal of the intake determination.

Once a regular grievance is found appropriate for intake, a Level I review is conducted by the warden or superintendent of the inmate's facility. A Level I decision informs an inmate that, when an inmate is dissatisfied with a Level I determination, the inmate may initiate a Level II appeal to the office of the Regional Director, the Health Service Director, or the Chief of Operations for Classifications and Records. Level II is usually the final level of review, although some matters may be appealed to Level III, the office of the Deputy Director or the Director of the VDOC.

### B.

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") which provides, in part, that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). By the plain language of the statute, exhaustion of administrative remedies is a precondition to the filing of a prisoners civil rights action; thus, a plaintiff who

filed her lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if she later demonstrates that she filed a grievance and appealed it to the highest extent of the prison's grievance procedure after commencing the lawsuit. *See Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002), citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit).

Proper exhaustion of administrative remedy procedures for the purposes of § 1997e(a) means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (reasoning, *id.* at 2387, that "[t]he text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term exhausted to mean what the term means in administrative law, where exhaustion means proper exhaustion. Section 1997e(a) refers to such administrative remedies as are available, and thus points to the doctrine of exhaustion in administrative law."). Section 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the remedy inadequate. *Id.* at 741, n.6. For example, the inmate in *Booth* filed a grievance pursuant to the state prison's grievance procedure, but failed to appeal the denial to the intermediate or final appeal levels. Because the inmate failed to appeal the denial, the inmate was deemed to have failed to exhaust his administrative remedies. *Id*. at 735. Additionally, the Court in *Booth* held that even where inmates limited their "prayers for relief to

money damages not offered through administrative grievance mechanisms. . . . Congress has mandated exhaustion clearly enough." *Id.* at 741.

VDOC OP 866.1(V)(A)(1) requires that an inmate demonstrate that she has made a good faith effort to resolve an issue informally prior to submitting a formal grievance, and that this good faith effort must be documented using a pre-printed multi-part informal complaint. Contrary to Plaintiffs' contentions, the submission of an informal complaint, not an Inmate Request Form, is the first step in exhausting administrative remedies. An Inmate Request Form, such as the forms Plaintiffs allege they sent to Major Frame or other Fluvanna personnel, plays no part in resolving an issue informally or properly exhausting administrative remedies in accordance with VDOC OP 866.1. Likewise, Plaintiffs' discussions of the incident with their building manager, a prison investigator, or the prison warden do nothing toward resolving an issue informally or properly exhausting administrative remedies in accordance with VDOC OP 866.1.

Plaintiffs state that they submitted several informal complaints, none of which were answered, but that they did not submit these forms "until the request forms were returned, again in compliance with policy." Plaintiffs contend that none of the informal complaint forms were returned to them, and that they could not file regular grievances because "inmates are told that a grievance cannot be submitted until after the informal complaint is returned. The returned informal complaint form must be attached to the grievance form." Thus, Plaintiffs conclude, the grievance procedure was unavailable to them. However, simply submitting an informal complaint does not constitute proper exhaustion. An inmate must not only initiate a *regular grievance*; she must also appeal *any* denial of relief through *all the levels of appeal* available in the grievance process. Under VDOC OP 866.1(VI)(A)(2)(A), an inmate must attach her

informal complaint to the grievance. If the inmate does not receive a response to her informal complaint within 15 days of the date that her informal complaint was logged, then she may submit a grievance and attach the informal complaint receipt as documentation of her attempt to resolve the issue informally. *See* VDOC OP 866.1(V)(2). An inmate is not required to wait beyond the 15 day period for a response to an informal complaint before submitting a grievance, and VDOC OP 866.1 does not require that an inmate receive a returned Inmate Request Form before submitting an informal complaint.

Assuming *arguendo* that Plaintiffs submitted informal complaints concerning their allegations, and that they could not attach the requisite documentation to a regular grievance (because (i) they had not received either informal complaint receipts or (ii) informal complaints with responses had not been returned to them), the undisputed fact is that Plaintiffs made *no effort* to submit regular grievances. Plaintiffs had the ability and the opportunity to do so, notwithstanding any adverse intake decisions on their Inmate Request Forms or informal complaints. Had the grievances been rejected at intake because of deficiencies in documentation of having filed informal complaints, Plaintiffs then would have had the opportunity to request a review of the intake decision. Plaintiffs did not complete all steps of the institutional grievance procedure, as reflected in VDOC OP 866.1, and thus did not properly exhaust all available administrative remedies. *See Woodford*, 126 S. Ct. at 2382 ("Prisoners must now exhaust all available remedies. . . .") *see also Booth*, 532 U.S. at 741, n.6; *Woodford*, 126 S. Ct. at 2384-86 (upholding district court's finding that plaintiff failed to properly exhaust all available administrative remedies where initial grievance was rejected because it was not filed within the 15 working day period prescribed by the regulations of the California Department of Corrections); *Cooper v. Schilling, et al.*, Civil Action No. 7:06-cv-00296 (W.D. Va. November

20, 2006) (Turk, S.J.), slip op. at 3-5, 2006 WL 3359592 at *2 (Virginia inmates are required to exhaust claims in accordance with the grievance procedures established by the VDOC); *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004) (same); *Lawrence v. Va. Dep't of Corr.*, 308 F. Supp. 2d 709, 718 (E.D. Va. 2004) (where prison policies require inmates to file grievances within a specified time period following a complained-of event, but plaintiff is unable to do so because the period has expired, plaintiff is still required to "appeal[] [the] procedural denials to the point of exhaustion of . . . administrative remedies," *id.* at n. 14, before filing lawsuit in federal court).

Here, by not properly exhausting all available administrative remedies, Plaintiffs did not afford the VDOC a full and complete opportunity to determine whether their grievances met the criteria for intake, and if so, to then review their grievances. Actions arising out of allegations concerning prison conditions cannot be brought in federal court until all available administrative remedies have been exhausted, and § 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. *Booth*, 532 U.S. at 741 n. 6. There is no genuine issue of material fact in this case as to the issue of exhaustion. Plaintiffs failed to properly exhaust the administrative remedies available to them through the inmate grievance system, as required by 42 U.S.C. § 1997e(a), before filing the instant lawsuit. Accordingly, the court will grant summary judgment in favor of Defendant.

**IV.**

For the stated reasons, Defendant's motion for summary judgment on the ground that Plaintiffs failed to exhaust all available administrative remedies will be granted. Any other pending motions will be denied as moot, and the case will be stricken from the court's active docket.

The Clerk of the Court will be directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this  9th  day of December, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE